*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone (602) 274-1100
Ty D. Frankel (027179)
tfrankel@bffb.com

*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone (619) 756-7748
Patricia N. Syverson (020191)
psyverson@bffb.com

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Sergiu A. Schipor, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>Mesa Airlines, Inc., a Nevada corporation,<br><br>Defendant. | Case No. 2:17-cv-04044-JJT<br><br>**PLAINTIFF SERGIU SCHIPOR'S MOTION FOR CONDITIONAL FLSA CLASS CERTIFICATION AND TO AUTHORIZE NOTICE TO SIMILARLY SITUATED PERSONS UNDER 29 U.S.C. § 216(b) AND FOR EXPEDITED DISCOVERY** |

Plaintiff Sergiu A. Schipor ("Schipor") moves this Court for entry of an order (1) conditionally certifying this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), (2) authorizing Schipor to mail notice to other potential plaintiffs, (3) approving the Proposed Notice and Consent to Opt-In to Collective Action attached hereto as Exs. 1 and 2, respectively, and (4) requiring that, within ten (10) days of the Court's ruling on this Motion, Defendant Mesa Airlines, Inc. ("Mesa Airlines") produce the names and addresses of all current and former Mesa Airlines pilots who had wages withheld within the past three years as a result of entering into a promissory note related to mandatory pilot training (the "Pilots").

In support of this Motion, Schipor relies on the pleadings of record, a declaration executed by Sergiu A. Schipor, a corroborating declaration from Opt-In Plaintiff Gabriel Molina, and Mesa Airlines documents setting forth the Company's compensation policies and procedures applicable to all the Pilots at issue in this case. The evidence and pleadings presented by Schipor sufficiently demonstrate that, pursuant to Mesa Airlines' policy, Schipor and other similarly situated Pilots had pay periods in which they were not paid the minimum wage in violation of the FLSA, 29 U.S.C. §§ 201-219. Thus, Schipor respectfully requests that the Court conditionally certify this case as a collective action under section 216(b) of the FLSA and order that notice be issued on an expedited basis to all current and former Mesa Airlines Pilots from November 2, 2014 to the present.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.      INTRODUCTION

Schipor filed this collective action under the FLSA on behalf of himself and other similarly situated Mesa Airlines Pilots. Mesa Airlines' Pilots are required to enter into promissory notes with the company as a condition of their employment to pay for mandatory training, and Mesa Airlines does not pay the Pilots the minimum wage if they leave the company's employ within one year regardless of whether they owe money under the promissory note or not. This compensation scheme was set up by Mesa Airlines for

one apparent reason – to induce Pilots to stay employed with Mesa Airlines despite earning shockingly low wages. It boils down to this: Mesa Airlines requires Pilots to enter into promissory notes to participate in mandatory training, and to induce them to stay with the company for a minimum of twelve months, Mesa Airlines sues Pilots who leave earlier than that time period and refuses to pay them the minimum wage. This presents precisely the kind of wage and hour abuses the FLSA is meant to remedy. Through this action, Schipor seeks to recover the minimum wage compensation the Pilots have earned but not been paid.[1]

Numerous similarly situated Pilots continue to be victimized by Mesa Airlines' illegal wage practices and four Pilots have filed consents to join this case to date. Schipor requests authorization to send notice to potential opt-in plaintiffs and expedited discovery of the names and addresses of all current and former Mesa Airlines Pilots who had wages withheld within the past three years as a result of entering into a promissory note related to mandatory pilot training.[2] The statute of limitations continues to run for each individual's claim until he or she opts in, and thus notifying potential opt-in plaintiffs of this action and their right to opt in is critical. 29 U.S.C. § 256(b); *see also Chastain v. Cam*, No. 3:13-cv-01802-SI, 2014 WL 3734368, at *12 (D. Or. July 28, 2014). With each passing day, many pilots suffer a reduction in the amount they can recover for Mesa Airlines' violations of the FLSA.

## II. FACTUAL BACKGROUND

Schipor was employed by Mesa Airlines as a pilot from December 2014 until November 20, 2015. Complaint, Doc. 1, ("Compl.") at ¶ 11; Declaration of Sergiu Schipor

---

[1] In addition to violation of the FLSA, Schipor also alleges violations of the Arizona Wage Statute, A.R.S. §§ 23-350 – 23-355; 23-363 – 23-364 and will pursue class action certification for his state law claims under Federal Rule of Civil Procedure 23 at a later time.

[2] A two-year statute of limitations exists for filing a case under the FLSA, but when the causes of action arises from a willful violation, the statute of limitations extends to three years. 29 U.S.C. § 255(a); *see also Sullivan v. City of Phoenix*, 845 F. Supp. 698, 704 (D. Ariz. 1993); *Williams v. U.S. Bank Nat'l Ass'n*, 290 F.R.D. 600, 613 (E.D. Cal. 2013) (allowing notice to go out for three year period at conditional certification phase).

1  ("Schipor Decl.") at ¶ 2, attached hereto as Ex. 3.  During his employment, Schipor was
2  supposed to earn $22.18 per flight hour.  *Id.*   He was also entitled to a nontaxable per diem
3  rate of pay for each per diem hour worked.  *Id*.  When Schipor did not stay employed for
4  twelve months, Mesa Airlines responded by not paying him the minimum wage as a
5  repercussion for his shortened tenure.  *Id*. at ¶¶ 3, 6-8.

6  Mesa Airlines created this wage scheme to induce Pilots to stay with the company
7  longer than one year despite receiving low pay and being subjected to extraordinary
8  working conditions.  Mesa Airlines accomplished its goal of inducing Pilots to stay with
9  the company by requiring Pilots to enter into a promissory note for thousands of dollars in
10 order to complete mandatory training, only to withhold the minimum wage and even sue
11 the Pilots if they failed to stay with the company for a minimum of one year.  Complaint
12 at ¶¶ 6, 36; Schipor Decl. at ¶¶ 7-10; Declaration of Gabriel Molina ("Molina Decl.") at ¶¶
13 8-12, attached hereto as Ex. 4.

14 For example, as a condition of his employment with Mesa Airlines, Schipor was
15 required to enter into a Jet Training Event Promissory Note with Mesa Airlines related to
16 the costs associated with the mandatory pilot training he was required to complete.  Schipor
17 Decl. at Ex. A.  Pursuant to the Promissory Note, Schipor promised to pay Mesa Airlines
18 a sum of $12,712.00, which amount was conditioned on him completing the mandatory
19 pilot training and remaining employed by Mesa Airlines for a requisite period of time.
20 Schipor Decl. at ¶ 4.  The Promissory Note provided Schipor a credit against the principal
21 amount of $12,712.00 depending on the length of service he had with Mesa Airlines.  *Id.*

22 Pursuant to the Promissory Note, Mesa Airlines indicated that it would offset the
23 unpaid balance of the Promissory Note owed to Plaintiff in the event Schipor leaves
24 employment prior to twelve months from the date of successful completion of the pilot
25 training program.  Schipor Decl. at ¶ 5.  For example, if Schipor left employment with
26 Mesa Airlines within one month of successful completion of the pilot training program, he
27 owed Mesa Airlines the full $12,712.00 amount from the Promissory Note.  Schipor Decl.
28 at Ex. A.  If Schipor left employment with Mesa Airlines within ten to eleven months, he

1 owed Mesa Airlines $2,112.00.  There was a sliding scale based on the number of months 2 of employment.  *Id.*

3 In or around November 2015, Schipor notified Mesa Airlines that he would be 4 leaving its employ.  Schipor Decl. at ¶ 6.  Schipor's employment with Mesa Airlines ended 5 on November 20, 2015, which was after eight to nine months of service as a pilot with 6 Mesa Airlines.  *Id.*  According to the Promissory Note Schipor was required to enter into 7 as a condition of his employment, Mesa Airlines maintained that Schipor owed the 8 company $4,232.00 for the mandatory pilot training.  *Id.* at ¶ 7.

9 Not only did Mesa Airlines seek payment for the amount the company alleged was 10 due under the Promissory Note, it also failed to pay Schipor any wages for his final pay 11 period working as a Pilot for the company in November 2015.  *Id*. at ¶¶ 7-8.   Mesa Airlines 12 unlawfully withheld approximately $1,011.86 in wages earned and paid Schipor zero 13 dollars for the final pay period of his employment.  *Id*. at ¶ 8. Schipor's wages were not 14 paid "free and clear" as required by the FLSA.  Schipor's net pay for his final pay period 15 that concluded with his separation on November 20, 2015 was zero dollars, which is below 16 the minimum wage.  *Id*.  Schipor discovered that Mesa Airlines was withholding all wages 17 from his final paycheck, including the minimum wage, by email and written 18 correspondence dated on or around December 21, 2015 and December 23, 2015 19 respectively.  *Id*. at Exs. B & C.

20 Mesa Airlines' improper policies and compensation practices applied to Schipor and 21 the similarly situated Pilots.  Compl. at ¶ 33.  Mesa Airlines continuously recruits Pilots to 22 fill open pilot positions, which requires the Pilots like Schipor to complete mandatory pilot 23 training.  *Id*. at ¶ 34.  Rather than simply pay for the Pilots' training, Mesa Airlines requires 24 the Pilots to enter into a Promissory Note with Mesa Airlines for thousands of dollars.  *Id*. 25 at ¶ 35.  The amount owed from the promissory note is reduced in proportion to the length 26 of months the Pilots have been with Mesa Airlines and after twelve months of service the 27 Pilots are no longer indebted to the company under the Promissory Note.  *Id*.  However, 28 many Pilots leave Mesa Airlines' employ before the twelve-month period on the

Promissory Notes expires. *Id*. at ¶ 36. If that occurs, Mesa Airlines systemically reduces the Pilots' wages and withholds payment of the minimum wage for their outstanding pay periods at the time of separation. *Id*. at ¶ 37; see also Schipor Decl. at ¶¶ 8-10; Molina Decl. at ¶¶ 10-12, 16-17.

Mesa Airlines has willfully violated and continues to willfully violate federal and Arizona wage and hour statutes and regulations with the intent of altering the at-will relationship of the Pilots, by depriving them of compensation at the minimum wage if they do not remain employed by Mesa Airlines for a requisite amount of time designed by the company. Compl. at ¶ 38. In fact, Mesa Airlines has been filing lawsuits against its Pilots, even after withholding payment of the minimum wage, to recoup wages promised to the Pilots that should have been paid free and clear to them regardless of the costs associated with training. 29 C.F.R. § 531.35. Compl. at ¶ 39. This compensation scheme was intentionally designed by Mesa Airlines to circumvent the requirements of the FLSA and induce Pilots to remain employed by Mesa Airlines for a minimum of twelve months. Compl. at ¶ 40.

Mesa Airlines' improper policies and compensation practices that applied to and impacted Schipor also applied to all the similarly situated Pilots. Schipor learned through trainings and observations of and conversations with other Pilots that Mesa Airlines' compensation practices at issue were uniformly applied. Schipor Decl. at ¶ 9. From his conversations with other employees, Schipor learned that other Pilots are subject to the same promissory note that he was, which resulted in Mesa Airlines alleging that he owed the company money and not receiving the minimum wage when he left the company before twelve months. Schipor Decl. at ¶ 10. Specifically, Schipor identified by name three other Pilots he personally knew who were subject to the same Mesa Airlines policies and compensation practices that he was. Schipor Decl. at ¶ 10.

Finally, in addition to the Mesa Airlines documents and Schipor's experiences, Opt-In Plaintiff Gabriel Molina's experiences further support the uniformity of Mesa Airlines' compensation practices at issue in this case. Like Schipor, Mr. Molina was a Pilot for Mesa

Airlines. Molina Decl. at ¶ 2. Even after paying what Mesa Airlines alleged that he owed under the promissory note because he left the company prior to working there one year, Mesa Airlines still refused to pay him the minimum wage in his final paycheck. Molina Decl. at ¶¶ 9-12. Mr. Molina had conversations with other Pilots regarding this practice, and learned that his fellow Pilots were subject to the same compensation practices that he was, including two Pilots he identified by name. Molina Decl. at ¶¶ 13-17. Given that Mesa Airlines' unlawful refusal to pay the minimum wage was uniform among the Pilots, it is not surprising that three Pilots in addition to Schipor have already opted in to this lawsuit even prior to Notice going out. Docs. 12-14.

## III. LEGAL ARGUMENT

### A. CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION IS APPROPRIATE BECAUSE SCHIPOR IS SIMILARLY SITUATED TO OPT-IN PLAINTIFFS AND PUTATIVE OPT-IN PLAINTIFFS.

Congress enacted the FLSA to shield employees from oppressive working hours and substandard wages. *See Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981). The FLSA enables workers to receive "[a] fair day's pay for a fair day's work" and protects them from the "evil of 'overwork' as well as 'underpay.'" *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (quoting 81 CONG. REC. 4983 (1937) (message of President Roosevelt)(case superseded by statute on other grounds). The FLSA exists to protect employees from precisely the type of unlawful wage policies and procedures established by Mesa Airlines.

Pursuant to 29 U.S.C. § 216(b) of the FLSA, courts may authorize notice to a class that is "similarly situated" to the named plaintiff. *Stickle v. SCI W. Mkt. Support Ctr.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *1 (D. Ariz. Sept. 30, 2009); *Wertheim v. State of Arizona*, No. CIV 92-453 PHX RCB, 1993 WL 603552, at *2 (D. Ariz. Sept. 30, 1993). If the plaintiff satisfies the requisite "notice stage" determination that plaintiffs are similarly situated, conditional certification of the proposed class is proper and the case should proceed to the period of notification, which will permit potential class members to

1  opt into the lawsuit.³  *See Stickle*, 2009 WL 3241790, at *2; *Wertheim*, 1993 WL 603552,
2  at *1. The "similarly situated" standard utilized for collective action certification is less
3  stringent than the requirements of Federal Rule of Civil Procedure 23(b)(3). *Taylor v.*
4  *AutoZone Inc.*, No. CV-10-8125-PCT-FJM, 2014 WL 5843522, at *2 (D. Ariz. Nov. 12,
5  2014) (FLSA "similarly situated" standard "remains less stringent than the requirement
6  that common questions predominate in certifying class actions under Rule 23"); *see also*
7  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (finding that claims and
8  positions of employees need not be identical to meet § 216(b) similarly situated standard);
9  *Wilson v. Maxim Healthcare Servs., Inc.*, No. C14-789RSL, 2014 WL 7340480, at *2
10 (W.D. Wash. Dec. 22, 2014) (noting that the "similarly situated" standard is "considerably
11 less stringent" than Rule 23's requirement that common questions predominate over
12 individual ones).

### 1. The initial conditional certification requirement is "lenient."

"The majority of courts,' including those within the District of Arizona, have 'adopted the two-tiered approach[]' in deciding whether to grant FSLA [sic] collection action status." *Villarreal v. Caremark LLC,* No. CV-14-00652-PHX-DJH, 2014 WL 4247730, at *3 (D. Ariz. Aug. 21, 2014) (citing *Anderson v. Ziprealty, Inc.,* No. CV 2012-0332-PHX-JAT, 2013 WL 1882370, at *2 (D. Ariz. May 3, 2013) (citing cases)); *Barrera v. U.S. Airways Group, Inc.,* No. CV-2012-02278-PHX-BSB, 2013 WL 4654567, at *2 (D. Ariz. Aug. 30, 2013) (same); *Stickle,* 2009 WL 3241790, at *2 (same).⁴ "'At this first stage, the court require[s] nothing more than substantial allegations that the putative class

---

³ Courts also accept consents to opt-in to the action from similarly situated employees who join the case prior to the court's official authorization of noticing other similarly situated persons. *See Wertheim*, 1993 WL 603552, at *8.
⁴ This two-tiered approach utilized in this District has been affirmed by five United States Courts of Appeals. *See White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 877 (6th Cir. 2012)); *Myers v. Hertz Corp.,* 624 F.3d 537, 554–55 (2d Cir. 2010); *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1260 (11th Cir. 2008); *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001).

members were together the victims of a single decision, policy, or plan.'" *Villarreal,* 2014 WL 4247730, at *3 (quoting *Stickle,* 2009 WL 3241790, at *2) (internal quotation marks and citations omitted). "'All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.'" *Wertheim,* 1993 WL 603552, at *1. What is more, "'[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.'" *Juvera v. Salcido,* 294 F.R.D. 516, 520 (D. Ariz. 2013) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001)).

The requirement is a "lenient" burden of illustrating that a plaintiff is similarly situated to others, which may be satisfied with affidavits and the complaint alone. *Goudie v. Cable Commc'ns, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394, at *3-4 (D. Or. Oct. 14, 2008; *see also Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1138-39 (D. Nev. 1999); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007).  As can be seen, at this initial, so-called notice stage, a plaintiff's burden "is low." *Villarreal,* 2014 WL 4247730, at *3 (citing, *inter alia, Wellens v. Daiichi Sankyo Inc.,* No. C-13-00581 DMR, 2014 WL 1422979, at *2 (N.D. Cal. Apr. 11, 2014) (internal quotation marks and citations omitted) ("[S]ome courts have held that the plaintiff bears a very light burden in substantiating allegations at this [notice] stage.")) "The Court uses a fairly lenient standard because the Court does not have much evidence" in that ordinarily, as here, the case is at the outset. *See Juvera,* 294 F.R.D. at 520 (citing *Hipp,* 252 F.3d at 1217–1218) (other citation omitted).

### 2. Mesa Airlines' employment practices are uniformly applied to all of the Pilots.

Given this lenient burden, motions to certify a class for notification purposes are "typically" granted. *Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014); *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1189 (D. Ariz. 2014). Schipor

need only show an identifiable factual or legal nexus between his claims and those of the similarly situated Pilots, such that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies of the FLSA. *See Stickle*, 2009 WL 3241790, at *3. (citing *Wertheim*, 1993 WL 603552, at *1). In fact, this District has granted motions for conditional certification under the FLSA in actions brought by individuals who allege that they did not receive the minimum wage. *See, e.g., Juvera v. Salcido*, 294 F.R.D. 516, 520 (D. Ariz. 2013) (granting conditional certification of class of employees who alleged that they were not always paid the minimum wage).

Here, Schipor easily satisfies the standard for conditional certification. The key issue is whether the Pilots were properly compensated for the hours they worked. The key facts in this case revolve around uniform compensation policies that apply to all of the Pilots, which is demonstrated in the pleadings, multiple declarations from Pilots, and company documents. The Pilots were required to enter into a promissory note with Mesa Airlines in order to start their employment and complete mandatory training. However, the promissory note required that they remain with the company for a minimum of twelve months or else face monetary penalties including withholding of the minimum wage. The Pilots who comprise this class left Mesa Airlines' employ prior to the twelve months required under the promissory note, and as a result, Mesa Airlines did not pay them the minimum wage due in their paychecks. The facts and legality of these uniform practices apply to all the similarly situated Pilots. *See* Section II, *supra*, citing Complaint, Schipor Decl. and Molina Decl., and company documents.

Given the foregoing analysis, Schipor has more than satisfied the similarly situated requirement, especially given that the "lower standard for conditional certification applies." *See Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997) ("At the notice stage, courts . . . require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan[.]")

(internal quotation marks and citation omitted).  The Court should certify this matter as a collective action under the FLSA so that notice to other Pilots can go forward.

### B. NOTICE SHOULD BE GIVEN TO SIMILARLY SITUATED PILOTS.

The many other similarly situated Pilots victimized by Mesa Airlines' practices should be notified about this lawsuit so they may opt-in if they desire.  While the FLSA does not provide specific procedures by which claimants may opt-in, the United States Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."[5]  *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989).

The court's facilitation of notice to potential opt-in plaintiffs serves the broad remedial purpose of the FLSA.  *See Brooks v. BellSouth Telecoms'., Inc.,* 164 F.R.D. 561, 566 (N.D. Ala. 1995).  As the Supreme Court explained, the benefits of a collective action proceeding under § 216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170.  Once the Court certifies the collective action, there is a strong presumption that authorization of notice follows.  *See Wertheim*, 1993 WL 603552, at *6 (providing plaintiffs with multiple chances to draft an acceptable form of notice after defendants' objections to language in notice); *see Ballaris v. Wacker Silttronic Corp.*, No. 00-1627-KI, 2001 WL 1335809 at *3 (D. Or. Aug. 24, 2001) (judge offering "If the parties are unable to reach agreement [on the form of notice], I am available to assist via a telephone conference").  It is common for a court to approve a plaintiff's proposed notice submitted with conditional certification briefing similar to the one provided by Schipor in this case.  *See, e.g., Juvera v. Salcido*, 294 F.R.D. 516, 523 (D.

---

[5] Although *Hoffman-La Roche* involved litigation arising under the Age Discrimination in Employment Act, subsequent courts have adopted its holding in actions arising under the FLSA, including the District of Arizona.  *Villarreal v. Caremark LLC,* 2014 WL 4247730 (D. Ariz. Aug. 21, 2014); *see also, Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 147 n.5 (4th Cir. 1992); *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex. 1999); *Garner v. G.D. Searle Pharm. & Co.,* 802 F. Supp. 418, 422 (M.D. Ala. 1991).

Ariz. 2013) (approving plaintiff's notice and authorizing plaintiff to mail notice after considering the plaintiff's draft notice during conditional certification briefing).

The requirement for notice is the same similarly situated standard applied in the decision to certify the action as collective. The plaintiff must establish that there are similarly situated individuals who may desire to opt into the action. *See Dybach v. State of Florida Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991); *see Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519-20 (D. Md. 2000) (explaining that prior to issuing notice in a collective action, plaintiffs must make "some factual showing by affidavit or otherwise" that potential plaintiff group is similarly situated); *D'Anna v. M/A-COM, Inc.,* 903 F. Supp. 889, 893-94 (D. Md. 1995) (requiring only a "preliminary factual showing that a similarly situated group of potential plaintiffs exists" prior to issuing notice). This lenient requirement is satisfied by a "modest factual showing" that the named plaintiffs and other potential plaintiffs "were victims of a common policy or plan that violated the law." *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). When analyzing whether the plaintiff has made the required showing, the court should not evaluate the merits of the plaintiffs' claim. *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 262 (S.D.N.Y. 1997). Also, "[f]actual disputes do not negate the appropriateness of court facilitated notice." *Camper,* 200 F.R.D. at 520.

As explained above, Schipor readily satisfies the similarly situated standard. The pleadings and evidence demonstrate that he and similarly situated Pilots have the same job duties and are subject to the same uniform rules and policies systematically imposed on them by Mesa Airlines. The Pilots were improperly required to work without receiving the minimum wage according to company policy. *See* Section II, *supra*. Absent notice, the Pilots likely will not receive timely, complete and accurate information about this action, nor will they have meaningful access to the court or an efficient method of vindicating their rights. *Cf. Hoffman-LaRoche,* 493 U.S. at 170 ("[a] collective action

allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources").

### C. NOTICE MUST BE EXPEDITED DUE TO THE RUNNING OF THE STATUTE OF LIMITATIONS.

Similarly situated Pilots unknowingly depend on this Court to authorize notice of the pendency of this case.  Notice to prospective plaintiffs should be expedited to toll the running of the statute of limitations as to the claims of potential opt-in plaintiffs.  Under applicable provisions of the Portal-to-Portal Pay Act, the statute of limitations on the claims of potential plaintiffs continues to run until each individual files a written consent to join the action as a party plaintiff.  *See* 29 U.S.C. § 256.  Since similarly situated Pilots' claims are eroding with each passing day, notice should be promptly authorized to reduce the losses suffered.  In fact, courts have tolled the statute of limitations during the pendency of a decision for conditional certification for equitable reasons and Schipor reserves the right to seek tolling.  *See McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).

Authorizing early notice to potential plaintiffs follows the Supreme Court's suggestion that a district court "begin its involvement early, at the point of the initial notice" in actions brought under § 216(b).  *Hoffmann-La Roche,* 493 U.S. at 171.  The Court discussed the benefits of early involvement by courts:

> A trial court can better manage a major [FLSA] action if it ascertains the contours of the action at the outset. The court is not limited to waiting passively for objections about the manner in which the consents were obtained. By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner.

*Id.* at 171-72.  Notice must therefore be expedited because time is of the essence.

### D. THE PROPOSED NOTICE IS FAIR AND ADEQUATE.

As stressed by the Supreme Court, the effectiveness of a collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."

*Id.* at 170. A court-authorized notice prevents dissemination of "misleading communications" and reduces the likelihood that subsequent corrective notices will be necessary. *Id.* at 171

Schipor's proposal for court-approved notice, which is attached as Ex. 1, is "timely, accurate, and informative," *id*. at 172, and is similar to the types of notice approved by other courts. *See, e.g., Gjurovich,* 282 F. Supp. 2d at 106-08. The Proposed Notice includes the following information:

- provides notice of the pendency of the action (Ex. 1, § I);
- accurately describes Schipor's claims and Mesa Airlines' denial of liability (Ex. 1, § II);
- accurately describes the composition of the class (Ex. 1, § III);
- notifies potential plaintiffs of the opportunity to opt-in, explains the procedure for exercising their right to opt-in and informs individuals that they are not required to participate (Ex. 1, § III);
- explains the legal effects of joining the lawsuit and the legal effects of not participating in the lawsuit (Ex. 1, §§ IV, V, & VI);
- accurately recites the prohibition against retaliation for participation in an FLSA action (Ex. 1, § VII);
- advises that the Court expresses no opinion regarding the merits of Schipor's claims or Mesa Airlines' liability (Ex. 1, § VIII); and
- accurately conveys the unenforceability of any waiver of rights to compensation due under the FLSA (Ex. 1, § IX).

Schipor requests that the attached Proposed Notice (Ex. 1) and Consent to Opt-In to Collective Action (Ex. 2) be mailed by first class mail to all current and former Mesa Airlines Pilots. Those individuals interested in participating would be required to return their consents to Schipor's counsel within 90 days of the mailing of the notice. *See Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 559 (N.D. Cal. 2016) (approving 90

day deadline for filing consents); *Adams,* 242 F.R.D. at 542 (same). The Proposed Notice is fair and accurate and should be approved for distribution.

### IV. SCHIPOR'S REQUEST FOR EXPEDITED DISCOVERY OF NAMES AND ADDRESSES OF CURRENT AND FORMER PILOTS IS ESSENTIAL TO ENSURE ACCURATE AND TIMELY NOTICE.

Schipor seeks expedited discovery of the names and addresses of all current and former Mesa Airlines Pilots, so they may receive the Proposed Notice and Consent to Opt-In to Collective Action form. This information is clearly relevant to the subject matter of the action. *See Hoffmann-La Roche,* 493 U.S. at 170 (holding that the requirement that a defendant produce the names and addresses of former employees for the purposes of facilitating notice is "relevant to the subject matter of the action and that there were no grounds to limit the discovery under the facts and circumstances of [the] case"). Production of this information is not only proper but is necessary to ensure all potential plaintiffs receive notice informing them of the action and their opportunity to opt in. *See Gjurovich,* 282 F. Supp. 2d at 108 (ordering defendants to produce the names and addresses of similarly situated individuals to facilitate distribution of the court-approved notice); *Taylor v. AutoZone, Inc.*, No. CV-10-8125-PCT-FJM, 2011 WL 2038514, at *5 (D. Ariz. May 24, 2011); *Rodriguez v. SGLC, Inc.*, No. 2:08-cv-01971-MCE-KJM, 2009 WL 454613, at *2 (E.D. Cal. Feb. 5, 2009).

Due to the time sensitivity of this action, Schipor requests an order for Mesa Airlines to produce the names and addresses within ten (10) days of the Court's ruling on this Motion in an importable and electronic format. *Byard v. Verizon West Virginia, Inc.*, 287 F.R.D. 365, 377 (N.D. W. Va. 2012) (ordering that opt in plaintiffs' information be produced to plaintiff in electronic format).

## V. CONCLUSION

Schipor's evidence satisfies the minimal preliminary showing that he is similarly situated to the other Pilots.[6] Certification of this lawsuit as a collective action and the issuance of notice is therefore appropriate. Schipor requests that the Court approve the proposed Notice, which fairly and accurately describes the litigation and the potential plaintiffs' rights to participate, and Consent form. Finally, to facilitate distribution of the court-authorized notice, Schipor requests that Mesa Airlines be ordered to immediately produce the names and last known addresses of all current and former Mesa Airlines Pilots who had wages withheld within the past three years as a result of entering into a promissory note related to mandatory pilot training from November 2, 2014 to the present in an electronic and importable format.

DATED: January 31, 2018.

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

By /s/ Ty D. Frankel
Ty D. Frankel
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
Facsimile: (602) 798-5860

---

[6] In the event this Court does not certify a conditional FLSA class at this time, courts routinely allow plaintiffs to renew a motion for conditional certification after additional evidence is obtained to satisfy the similarly situated standard and toll the statute of limitations for individual cases to be filed. *See, e.g. Ji v. Jling Inc.,* No. 15-CV-4194 (JMA)(SIL), 2016 WL 2939154, at *5 (E.D.N.Y. May 19, 2016) (denying initial motion for conditional certification noting that plaintiff may "renew his motion" if "additional facts and evidence" are discovered); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F.Supp.2d 1111, 1134 (N.D. Cal. 2011) ("To avoid prejudice to individual opt-in plaintiffs who may choose to file their own cases, the court invokes its equity powers to toll the statute of limitations.").

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Patricia N. Syverson
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 756-7748

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

  I, Karen Vanderbilt, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on January 31, 2018.

             /s/ Karen Vanderbilt